NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No.: 16-md-2687 (JLL) |
| *This Document Relates to: Civ. Action Nos. 17-11416, 17-4656, and 17-4659* | **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants Delta Chemical Corporation ("Delta Chemical"), John D. Besson, and Rebecca L. Besson's Motion to Dismiss Plaintiffs Washington Suburban Sanitary Commission ("WSSC"), Mayor and City Council of Baltimore ("Baltimore City"), and City of Richmond ("Richmond")'s Amended Complaints (ECF Nos. 555, 652, and 653) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Strike Certain Allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (ECF No. 901). Plaintiffs have submitted Opposition (ECF No. 902),[1] to which the Defendants have replied. (ECF No. 904). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendants' Motion to Dismiss and Strike Certain Allegations.

---

[1] An additional copy of Plaintiffs' Opposition was filed at a later time. (ECF No. 1002). Said Opposition is identical to the originally filed brief. Accordingly, the Court will rely on the arguments set forth by Plaintiff in their original Opposition. (ECF No. 902).

## I. BACKGROUND[2]

The Court has set forth, at length, the factual and procedural background as it pertains to this Multidistrict Litigation in its Opinion dated July 20, 2017. (ECF No. 405 at 1-24). Accordingly, the Court need not restate, and hereby incorporates, same herein. Thus, the Court will only set forth the relevant factual and procedural background as it pertains to these specific Defendants and their motions.

Plaintiffs brought this action seeking to recover monetary damages and injunctive relief against Delta Defendants for conspiring to suppress and eliminate competition in the sale and marketing of aluminum sulfate ("Alum"), pursuant to the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, the Clayton Antitrust Act, 15 U.S.C. §§ 12–17 & 29 U.S.C. §§ 52–53, and the laws of the State of Maryland. (Compl. ¶ 1). Plaintiffs contend that Delta Defendants agreed to "rig bids and allocate customers for, and to fix, stabilize, inflate, and maintain the price of, Alum sold to companies, municipal authorities, and governmental subdivisions in the United States from January 1, 1997 through at least February 2011 . . . ." (Id. ¶ 1). Specifically, Plaintiffs allege that Delta Defendants met to "discuss their respective Alum businesses," agreed to "'stay away' from each other's historical customers," submitted "intentionally high," or "throw away" bids, and withdrew winning bids "in cases where a bid was inadvertently submitted." (Id. ¶ 4).

Defendant John D. Besson is presently a resident of Miami Beach, Florida. (Id. ¶ 20). He was the president of Delta Chemical and "oversaw its sale and marketing of water treatment chemicals, including Alum," in addition to "effectuating attempts" to sell or merge Delta Chemical

---

[2] For purposes of brevity, the Court will only cite to the WSSC Amended Complaint whenever the WSSC, Baltimore City, and/or Richmond Amended Complaints allege similar facts. Hence, this background is generally derived from Plaintiff WSSC's Amended Complaint ("Compl."), which was originally docketed in Civ. Action No. 17-11416. (ECF No. 1). The Court must accept the allegations therein as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

with another company. (Id. ¶ 20). Plaintiffs allege that Defendant John Besson "joined, participated in, and benefitted from the unlawful [Alum] conspiracy." (Id. ¶ 20). Defendant Rebecca L. Besson is presently a resident of Miami Beach, Florida and was the chairperson of Delta Chemical's board of directors. (Id. ¶ 21). Plaintiffs aver that Defendant Rebecca Besson "knew or should have known about the unlawful [Alum] conspiracy ..., but allowed it continue and profited substantially from it." (Id. ¶ 21). After Delta Chemical combined with USALCO in November 2011, Defendants John and Rebecca Besson became USALCO consultants. (Id. ¶ 21).

Defendant Delta Chemical is a Maryland corporation which sold Alum throughout the United States with a principal place of business in Baltimore. (Id. ¶ 51). Plaintiffs allege that "[f]rom the beginning of the Conspiracy Period to the date USALCO combined with Delta Chemical on November 17, 2011, Delta Chemical was an active participant in, and benefitted from, the conspiracy." (Id. ¶ 51). Moreover, "[a]s a result of [Defendant] Delta Chemical's combination with USALCO, [Defendant] Delta Chemical ceased to be a potential competitor in the sale and marketing of Alum." (Id. ¶ 51). Plaintiffs contend that the combination "was made in furtherance of, and intended to reinforce, the Defendant's unlawful conspiracy . . . by increasing USALCO's market power and eliminating the possibility of competition emerging . . . ." (Id. ¶ 52). Plaintiffs also argue that Defendants John and Rebecca Besson "profited handsomely" from the combination. (Id. ¶ 53).

Prior to the combination, Defendant Delta Chemical sold Alum to Plaintiffs WSSC and Baltimore directly as well as indirectly through C&E Services, Inc. ("C&E Services"), located in Washington, D.C. (Id. ¶ 54). Plaintiffs assert that, Defendant Delta Chemical, C&E Services, or USALCO would always be the "winning" bidder despite solicitation of bids from outside Alum providers. (Id. ¶ 54). Additionally, Plaintiffs allege that Defendant Delta Chemical's contracts

for polyaluminum chloride ("PAC") "raise similar concerns [of conspiratorial conduct]." (Id. ¶ 131). Specifically, Delta Chemical submitted the winning bid in a 2004 PAC contract with Plaintiff WSSC at a rate of $1,376.00 per ton. (Id. ¶ 131). In 2009, Defendant Delta Chemical again submitted a winning bid for a PAC with Plaintiff WSSC at a price of $2,380.00 per ton, a *more than 72% increase*. (Id. ¶ 131) (emphasis in original). The next lowest bid was submitted for $7,250.00 per ton (three times Defendant Delta Chemical's winning bid) by Intercoastal Trading, Inc. (Id. ¶ 131).[3]

Plaintiff's WSSC and Baltimore City purchased Alum from Defendant Delta Chemical via "requirement contracts" at an as-needed basis from 1997 through early-2005. (Id. ¶ 246). "For example, WSSC solicited bids for new Alum contracts to begin in 2003 and 2004." (Id. ¶ 246). In both instances, Plaintiff WSSC received bids from Defendant Delta Chemical and General Chemical Corporation. (Id. ¶ 246). In 2004, Plaintiff WSSC "solicited bids for a new Alum contract" and C&E Services was the only bidder. (Id. ¶ 247). Plaintiff WSSC alleges that, "as part of and in furtherance of the conspiracy," C&E Services consistently raised the price it charged Plaintiff WSSC for Alum via the 2005 contract and, "[a]s a result, the price per ton of Alum increased by approximately 60%" from "$185.85 per ton to $314.00 per ton." (Id. ¶ 248). On December 23, 2008, C&E Services submitted a notification from Defendant Delta Chemical justifying an increase in Alum prices because of the "sulfuric acid market," a necessary component for making Alum. (Id. ¶ 249). However, Plaintiff WSSC contends that this justification stood in contrast to a decline in the price of sulfuric acid "*by more than a third*" from its October 2008 index price by December 2008. (Id. ¶ 249) (emphasis in original). In 2009, Plaintiff WSSC solicited bids for a new Alum contract through "BidBridge, an online solicitation and bidding

---

[3] Plaintiffs' contention that Delta Defendants' use of PAC contracts in furtherance of the conspiracy alleged herein is found solely in the WSSC Amended Complaint. (ECF No. 555 at ¶ 131).

4

platform," but only received three bids. (Id. ¶ 251). Defendant Delta Chemical submitted the winning bid at $304.00 per ton and C & S Chemicals, Inc. allegedly submitted a "throw away" bid of $537.00 per ton. (Id. ¶ 251).

After USALCO combined with Defendant Delta Chemical, USALCO raised the price it charged Plaintiff WSSC for Alum through the 2009 contract from $304.00 per ton to $311.50 per ton. (Id. ¶ 252). Plaintiff WSSC argues that the prices which USALCO charged for Alum were substantially similar to those charged by Defendant Delta Chemical prior to the combination and further demonstrate that "both [Defendant] Delta Chemical and USALCO were members of the conspiracy." (Id. ¶ 253). In April 2014, Plaintiff WSSC received a bid for a new Alum contract from USALCO for $314.19 per ton and a bid from Chemtrade, General Chemical's "successor-in-interest," for $422.00 per ton. (Id. ¶ 254). Plaintiff WSSC contends that "Chemtrade's bid, which was $107.81 (34.3%) more than USALCO's bid, was a 'throw away' bid made in furtherance of the conspiracy." (Id. ¶ 254).

Plaintiff Baltimore City makes similar allegations against Delta Defendants regarding Alum contract bidding. In 2006, Plaintiff Baltimore City received two bids and Defendant Delta Chemical submitted the winning bid. (ECF No. 652 at ¶ 153). In 2008, Defendant Delta Chemical submitted *"the only bid"* for a new Alum contract with Plaintiff Baltimore City and provided a price of $280.97 per ton. (Id. ¶ 155–156) (emphasis in original). In 2009, Defendant Delta Chemical attempted to raise the price of Alum for Plaintiff Baltimore City by 29.7% due to an "increase in price of the raw materials used to make Alum." (Id. ¶ 157–158). After negotiation, Defendant Delta Chemical agreed to increase the price by 23.1% and charge $345.97 per ton of Alum for 2009. (Id. ¶ 159–160). In 2012, Plaintiff Baltimore City received bids from USALCO

and General Chemical Corporation for a contract and USALCO was the winning bidder. (Id. ¶ 164).

Plaintiffs contend that, "[i]n addition to the lack of competition and resultant inflated prices demonstrated above," Delta Defendants' "bidding history over the Conspiracy Period" with respect to Alum contracts was not "freight-logical." (Compl. ¶ 255). Specifically, Plaintiffs allege that GEO Specialty Chemicals, Inc. had a water treatment chemical plant located in Baltimore, Maryland but never submitted a bid to supply Alum to Plaintiff WSSC. (Id. ¶ 255). Similarly, USALCO was headquartered in Maryland but never submitted a bid to Plaintiff WSSC prior to combining with Defendant Delta Chemical. (Id. ¶ 256). Additionally, Southern Ionics had a water treatment chemical plant in Williamsport, Maryland and also never submitted a bid to Plaintiff Baltimore City. (ECF No. 652 at ¶ 168).

"As a result of the conspiracy among [Delta] Defendants," Plaintiffs were allegedly "forced to pay supra-competitive prices for Alum" which they purchased from Defendant Delta Chemical and USALCO. (Compl. ¶ 257, 260). Plaintiff WSSC saw its cost for Alum "quadruple over a decade, rising from $82.10 per ton in 2000 to $314.00 per ton by 2010 . . . ." (Id. ¶ 260). Plaintiffs argue that Delta Defendants "used non-public means of communication . . . to eliminate competition by, *inter alia*, fixing prices, rigging bids, and allocating customers for Alum in the United States." (Id. ¶ 262). Plaintiffs further allege that Defendant John Besson made false representations regarding price increases in Alum due to increases in prices of raw materials. (Id. ¶ 271–276). Moreover, Delta Defendants allegedly "took additional affirmative acts of concealment, including ensuring that there were few written communications regarding their conspiracy and agreement." (Id. ¶ 279).

Accordingly, Plaintiffs assert the following claims: Count I – Conspiracy in Restraint of Trade in violation of the Sherman Act against all Defendants except Defendant Rebecca Besson; Count II – Conspiracy in Restraint of Trade in violation of the Maryland Antitrust Act against all Defendants except Defendant Rebecca Besson; Count III – Common Law Fraud against all Defendants except Defendant Rebecca Besson; Count IV – Breach of Contract against Defendant Delta Chemical; Count V – Breach of Contract against Defendant Delta Chemical; and, Count VI – Restitution, Disgorgement, and Unjust Enrichment against Delta Defendants.[4] Defendants seek to dismiss Plaintiffs' Amended Complaints for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6) ad/or to strike certain allegations from Plaintiffs' Amended Complaints under Federal Rules of Civil Procedure 12(f). (ECF No. 901).

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[4] Plaintiff Baltimore City asserts the following claims in its complaint against Delta Defendants: Claim I – Conspiracy in Restraint of Trade in violation of the Sherman Act against all Defendants; Claim II – Conspiracy in Restraint of Trade in violation of the Maryland Antitrust Act against all Defendants; Claim III – Common Law Fraud against Defendant Delta Chemical; Claim IV – Breach of Contract against Defendant Delta Chemical; Claim V – Breach of Contract against Defendant Delta Chemical; and, Claim VI – Restitution, Disgorgement, and Unjust Enrichment against Defendant Delta Chemical. (ECF No. 652). Additionally, Plaintiff Richmond asserts the following claims in its complaint against Delta Defendants: Count I – Conspiracy in Restraint of Trade in violation of the Sherman Act against all Defendants except Defendant Rebecca Besson; Count II – Conspiracy in Restraint of Trade in violation of the Virginia Antitrust Act, Va. Code Ann. § 59.1-9.5 against all Defendants except Defendant Rebecca Besson; and, Count V – Restitution, Disgorgement, and Unjust Enrichment against all Defendants. (ECF No. 653). As will be further explained herein, the analysis for all these claims is nearly identical. Thus, the Court will analyze all claims jointly unless there is a substantive reason for a separate analysis.

alleged." *Id.*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Third Circuit has held that the Court can review the record of prior actions between the parties and take judicial notice of the same in considering a motion to dismiss. *See Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

**B. 12(f) Motion to Strike Certain Allegations**

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may act either "on its own" or on a motion by a party. *Id.* at 12(f)(1)-(2). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the

litigation." *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156 (D.N.J 2012) (quoting *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). "[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Gray v. Bayer Corp.*, 2010 WL 1375329, at *2 (D.N.J. Mar. 31, 2010) (citing *Garlanger*, 223 F. Supp. 2d at 609). In fact, "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care." *Morgan Home Fashions, Inc. v. UTI, U.S. Inc.*, 2004 WL 1950370, at *8 (D.N.J. Feb. 9, 2004).

### III. ANALYSIS

#### A. Motion to Dismiss

For the following reasons, Delta Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint is denied.

##### a. Conspiracy in Restraint of Trade in Violation of the Sherman Act

To survive a motion to dismiss, Plaintiffs must prove two essential elements for a claim of conspiracy in restraint of trade in violation of the Sherman Act. Plaintiffs must show that (1) a "contract, combination, or conspiracy" existed and that (2) such contract, combination, or conspiracy "imposed an unreasonable restraint of trade." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002).

Preliminarily, this Court has already found that, at least at the pleading stage, a conspiracy existed. (ECF No. 405 at 45-65). Additionally, in their Amended Complaints, Plaintiffs allege that Delta Defendants conspired to suppress and eliminate competition in the sale and marketing of Alum. (Compl. ¶ 1). Specifically, Plaintiffs allege that Delta Defendants agreed to "rig bids

and allocate customers for, and to fix, stabilize, inflate, and maintain the price of, Alum sold to companies, municipal authorities, and governmental subdivisions in the United States from January 1, 1997 through at least February 2011 . . . ." (Id. ¶ 1). Furthermore, Plaintiffs allege Delta Defendants met to "discuss their respective Alum businesses," agreed to "'stay away' from each other's historical customers," submitted "intentionally high," or "throw away" bids, and withdrew winning bids "in cases where a bid was inadvertently submitted." (Id. ¶ 4). These allegations are sufficient to support a *prima facie* claim Delta Defendants engaged in a conspiracy which imposed an unreasonable restraint on the trade of Alum in violation of the Sherman Act. Hence, the claim must survive Delta Defendants' Motion to Dismiss.

### b. Conspiracy in Restraint of Trade in Violation of the Maryland Antitrust Act and the Virginia Antitrust Act

"Section 11–204(a)(1) of the Maryland Antitrust Act is the state law analogue of Section 1 of the Sherman Act." *Merck-Medco Managed Care, Inc. v. Rite Aid Corp.* 22 F. Supp. 2d 447, 450 n.4 (D. Md. 1998). The purpose of the Maryland Antitrust Act is "to complement the body of the federal law governing restraints of trade." *Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663 (1983) (quoting Md. Code Ann. § 11-202(a) (2005)). In construing the Act, "the courts [are to] be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters." *Nat. Design, Inc.*, 485 A.2d at 666; *see also Berlyn Inc v. The Gazette Newspapers*, 73 F. App'x 576, 582 (4th Cir. 2003).

Similarly, "[t]he Virginia Antitrust Act, with the exception of an interstate commerce component, shares common elements with sections one and two of the Sherman Act." *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991). The Virginia Antitrust Act prohibits "[e]very contract, combination or conspiracy in restraint of trade or commerce," Va. Code Ann. § 59.1–9.5 (1998), and "[e]very conspiracy combination, or attempt to monopolize, or

monopolization of, trade or commerce." *Id.* at § 59.1–9.6. In fact, the Virginia Act specifically provides that it is to be "interpreted and applied in harmony with federal antitrust law." *Oksanen*, 945 F.2d at 710. Therefore, Plaintiffs' claims under the Virginia Antitrust Act are "governed by the same standard as their claims under the Sherman Antitrust Act." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 108 F. Supp. 2d 549, 605 (W.D. Va. 2000) (citing *Satellite Television & Associated Res., Inc. v. Cont'l Cablevision of Va., Inc.*, 714 F.2d 351, 358 n.13 (4th Cir. 1983)). Consistent with the above guidance provided by the Fourth Circuit, this Court's analysis for Plaintiffs' claims under the Sherman Act must be applied to Plaintiffs' antitrust claims under both Maryland and Virginia law. Because Plaintiff's claims pursuant to the Sherman Act are sufficient to survive Delta Defendants' Motion to Dismiss, Plaintiffs' claims under Maryland and Virginia state antitrust claims must also survive.

### c. Common Law Fraud

Maryland's Court of Appeals has summarized the elements of a cause of action for fraud or deceit, "[i]n order to recover damages in an action for fraud or deceit, a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994) (internal citations omitted). Similarly, to establish a claim of actual fraud under Virginia law, a plaintiff must prove that: (1) the defendant "falsely represented or deliberately did not disclose (when it had a duty to disclose); (2) a material fact; (3) intentionally and knowingly; (4) with intent to mislead; (5) on which the [Plaintiff] reasonably relied; and (6) which caused

damage to party misled." *Arnlund v. Deloitte & Touche LLP*, 199 F. Supp. 2d 461, 486 (E.D. Va. 2002) (citing *Evaluation Research Corp. v. Alequin,* 247 Va. 143 (Va. 1994)).

Plaintiffs allege in their Amended Complaints that Delta Defendants "used deception," "made a misrepresentation," and "concealed, suppressed or omitted material facts in connection with the sale" of Alum. (Compl. ¶ 317). Specifically, Defendants allegedly "represented" that Alum prices were offered based on a "competitive market" while participating in an unlawful conspiracy to "inflict monetary harm" on Plaintiffs. (Id. ¶ 318, 322). For example, on December 23, 2008, "[Defendant] John Besson, then-President of [Defendant] Delta Chemical represented that [it] would need to raise the price of Alum by $36.33 per ton" due to the "sulfuric acid market." (Id. ¶ 249, 272). Similarly, on December 29, 2008, [Defendant] John Besson emailed the Engineer Supervisor of Plaintiff Baltimore City and "represented that [Defendant] Delta Chemical would need to raise the price of Alum due to 'a substantial increase in one of the raw materials that are used to make the aluminum sulfate.'" (Id. ¶ 273). However, Plaintiffs contends that these changes were misrepresentations which stood in contrast to a decline in the price of sulfuric acid "***by more than a third***" from its October 2008 index price by December 2008. (Id. ¶ 249) (emphasis in original).

Plaintiffs' allegations, when taken as true, support the claims that Delta Defendants knowingly misrepresented the price of Alum to Plaintiffs with the purpose of defrauding Plaintiffs and Plaintiffs reasonably relied upon Delta Defendants' representation and suffered a resulting compensable injury. *Nails*, 639 A.2d at 668 (internal citations omitted). Similarly, Plaintiffs' allegations support Plaintiffs' claims that Delta Defendants falsely and knowingly represented a material fact regarding price increases of Alum with intent to mislead Plaintiffs from the ongoing conspiracy and Plaintiffs reasonably relied on the representation which caused damages to

Plaintiffs. Therefore, at this juncture, Plaintiffs' claims of common law fraud must survive Delta Defendants' Motion to Dismiss.

### d. Breach of Contract against Defendant Delta Chemical

Under Maryland law, the elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). "In order to survive a motion to dismiss, a complaint for breach of contract [in Maryland] must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 791 (D. Md. 2002) (citing *Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566 (1977)). Likewise, "[f]or a breach of contract to be actionable [in Virginia], a party must establish a material breach." *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1081 (E.D. Va. 2011) (citing *Horton v. Horton*, 487 S.E.2d 200, (Va. 1997)).

The central dispute in this case with respect to the first breach of contract claim is whether Delta Chemical breached its contractual obligation to "only submit price increases that were based on changes in the contractor's cost of services and materials." (Compl. ¶ 328). Plaintiffs allege that Delta Defendants falsely represented increases in market prices of raw materials used to make aluminum sulfate as a justification for increasing contract prices for Alum. (Id. ¶ 272-273). These price increases allegedly stood in stark contrast to a "crash" in the market for sulfuric acid, a raw material used to create Alum. (Id. ¶ 275). Moreover, prices for other raw materials used to make Alum had allegedly declined at the time of the price increase. (Id. ¶ 276). Plaintiffs assert that Delta Defendants made affirmative representations to prevent Plaintiffs from "discovering the actual reason for the artificially-inflated prices." (Id. ¶ 277). Thus, at this juncture in the

proceedings, the Court finds that Plaintiffs have alleged sufficient facts to sustain their first set breach of contract claims under both Maryland and Virginia law.

With respect to the second breach of contract claim, the major point of contention is whether Defendant Delta Chemical "breached their contractual agreements that they had not agreed, connived, or colluded to produce a deceptive show of competition and had not colluded with any other person, firm or corporation in the bid on the Alum contracts." (Id. ¶ 333). "Beginning at least as early as 2010, Plaintiff WSSC's Alum supply contracts incorporated terms specifying that the Bidder/Offeror[, *i.e.*, Delta Defendants,] had not agreed, connived or colluded to produce a deceptive show of competition, and had not colluded with any other person, firm or corporation in the bid on the Alum contracts." (Id. ¶ 332). Plaintiffs assert that "[a]fter USALCO and [Defendant] Delta Chemical combined in November 2011, USALCO was always the 'winning' bidder, having either combined or colluded with all viable competitors." (Id. ¶ 244). Additional examples provided by Plaintiffs of the alleged collusion include substantial similarity between Defendant Delta Chemical and USALCO's bid prices for Alum after their combination and alleged "throw away" bids by Chemtrade. (Id. ¶ 252, 254). Plaintiffs also cite a lack of bids from "freight-logical" chemical plants such as GEO and Southern Ionics. (ECF No. 652 at ¶ 168). Hence, Plaintiffs have sufficiently alleged that there was a non-collusion component to their contract with Delta Defendants which was breached, such that their second set of breach of contract claims, under both Maryland and Virginia law, may proceed.

### e. Restitution, Disgorgement, and Unjust Enrichment

In Maryland, to support a claim for unjust enrichment, "a plaintiff must establish: (1) a benefit [was] conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit

14

under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 792–93. In Virginia, "[The] elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (quoting *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)).

Plaintiffs assert that it would be "inequitable" for Delta Defendants "to be allowed to retain the benefits" they "obtained from their illegal agreements, manipulative acts, and other unlawful conduct" at the expense of Plaintiffs. (Compl. ¶ 337). Moreover, Plaintiffs aver that it would be equally inequitable for Defendants John Besson and Rebecca Besson to be "allowed to retain the millions of dollars that each personally received . . . in connection with [Defendant] Delta Chemical's combination with USALCO" because of its alleged connection to the aforementioned conspiracy. (Id. ¶ 338). As discussed above, Plaintiffs have sufficiently alleged facts pertaining to the contracts which they had made with Delta Defendants regarding agreed terms on non-collusion. (Id. ¶ 332). Moreover, Plaintiffs have set forth sufficient allegations and examples of Delta Defendants' breach of these non-collusion contracts to show a violation. (Id. ¶ 333). Finally, Plaintiffs have shown that Delta Defendants' alleged breach of these contracts, if true, would cause Plaintiffs significant economic injury. (Id. ¶ 341d). Therefore, the Court concludes that Plaintiffs' claims for unjust enrichment must survive Delta Defendants' Motion to Dismiss.

### B. Motion to Strike Certain Allegations

Delta Defendants ask the Court to strike the allegations contained in paragraph 131 of Plaintiff WSSC's Amended Complaint regarding its purchase of PAC, on the basis that such allegations are "irrelevant to an Alum price fixing conspiracy" and "unsupported by the requisite

factual allegations." (ECF No. 901-1, at 27). Delta Defendants maintain that because "PAC is not the subject of this litigation, and no prior price fixing scheme has been pled regarding PAC." (Id. at 27). In sum, Delta Defendants argue that there is no basis of allegations of conspiracy regarding PAC and, "in any event," these allegations are "not probative to the issues in this case relating to liquid Alum." (ECF No. 904, at 11).

On the other hand, Plaintiffs allege in their Amended Complaints that bids received for PAC raise "similar concerns" to the conspiracy regarding liquid Alum. (Compl. ¶ 131). Plaintiffs provide examples of Delta Chemical "winning" PAC contracts in 2004 and 2009 at prices which increased by seventy-two percent over five years and explain that the next-lowest bid submitted on the 2009 contract was "*more than three times*" Defendant Delta Chemical's winning bid. (Id. ¶ 131) (emphasis in original). Plaintiffs further argue that their allegations regarding PAC are "relevant to the [Defendants'] ability to conspire, and the history of conspiracy, in the water treatment chemical industry." (ECF No. 902, at 28). Plaintiffs note that USALCO "explicitly linked non-competition agreements with [Defendant] Delta on Alum and PAC." (Id. at 28).

"[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Gray*, 2010 WL 1375329, at *2. In fact, "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care." *Morgan Home Fashions, Inc.*, 2004 WL 1950370, at *8. When accepting Plaintiffs' allegations as true, a possible relation can be drawn between USALCO's use of non-competition agreements with Defendant Delta Chemical on PAC in negotiations leading up to their

combination and Delta Chemical's participation in the general liquid Alum conspiracy. (ECF No. 902 at 28).

Moreover, even if the allegations "may ultimately prove to be immaterial," they are not "so wholly impertinent or scandalous as to presently warrant the 'drastic remedy' authorized by Rule 12(f). Once discovery is complete and the record more fully developed, [Delta] Defendants will have the opportunity to renew any challenges they may have to the Plaintiff[s'] allegations and/or evidence by way of an appropriate Rule 12(b)(6) motion, motion for summary judgment, or motion in *limine*." *Adams v. County of Erie, Pa.*, 2009 WL 4016636, at *1 (W.D. Pa. 2009). Thus, at this stage in the litigation, the Court must deny Delta Defendants' Motion to Strike Certain Allegations.

## IV. CONCLUSION

For the aforementioned reasons, Delta Defendants' Motion to Dismiss and Strike Certain allegations is denied. An appropriate Order accompanies this Opinion.

Date: August 14th, 2018

JOSE L. LINARES
Chief Judge, United States District Court